# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARTA NIEVES-RIVAS,       :     **Civil No. 3:17-CV-00868**

                        :

         **Plaintiff,**      :

                        :

   **v.**                    :

                        :     **(Magistrate Judge Carlson)**

**NANCY A. BERRYHILL**[1]   :

**Deputy Commissioner**     :

**for Operations of Social**    :

**Security**              :

         **Defendant.**   :

## MEMORANDUM OPINION

### I.   Introduction and Litigation History

This case calls upon us to examine a recurring issue in Social Security litigation—the sufficiency of an ALJ's assessment of a treating source medical opinion. Under the longstanding legal guidance which was in effect at the time of this case, we were instructed that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security. Due to the Federal Vacancies Reform Act, Former Commissioner of Social Security, Nancy A. Berryhill, is currently presiding as the Deputy Commissioner for Operations of the Social Security Administration, performing duties and functions not reserved to the Commissioner of Social Security.

observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See Adorno, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000).

In this case Marta Nieves-Rivas ("Nieves-Rivas") presents a claim for disability due to various physical limitations relating to diabetes, hypertension, and osteoarthritis. This Court has been called upon to review the sufficiency of the Administrative Law Judge's ("ALJ") evaluation of a treating physician's Medical Source Statement which opines on some of Nieves-Rivas's physical capabilities in a fashion which would likely render her disabled.

On August 6, 2015, Ms. Nieves-Rivas protectively filed claims under Titles II and XVI of the Social Security Act for disability and disability insurance benefits, and supplemental security income. (Tr. 17.) In both applications, she alleged the onset date of disability as July 7, 2015. (Id.) Her claims were initially denied on November 9, 2015, and subsequently, she filed a written request for an administrative law hearing on December 11, 2015. (Id.) Represented by counsel, Nieves-Rivas appeared and testified at a hearing held on November 9, 2016. (Id.) On December 22, 2016, the ALJ issued a written decision finding that Nieves-Rivas was not disabled within the meaning of the Social Security Act. In turn, Nieves-Rivas filed a request for review with the Appeals Council, which was denied on March 14, 2017. (Id. at 1.) Following this rejection, Nieves-Rivas filed the instant appeal with the District Court on May 17, 2017. (Doc. 1.)

Both parties have briefed this case, and it is ripe for resolution. For the reasons set forth below, we conclude that the ALJ's findings are not supported by substantial evidence, in that the opinion of Nieves-Rivas' treating source was not sufficiently considered and addressed. Accordingly, we find that a remand is in order for further consideration of this opinion evidence.

## II. <u>Factual Background</u>

Ms. Nieves-Rivas is a 47 year old woman with a ninth-grade education who has previously worked as a clothes presser. (Doc. 12 p. 3.) When Nieves-Rivas

applied for disability benefits, she listed high blood pressure, asthma, hepatitis C, diabetes, lupus, and heart murmur as severe conditions that limit her ability to work. (Tr. 210.) Though Ms. Nieves-Rivas did not list osteoarthritis on her disability report, the record indicates that she was experiencing issues with her knees at the time of her disability report. On August 17, 2015, Nieves-Rivas had a consultation with rheumatologist Dr. Praveen Jajoria ("Dr. Jajoria") due to knee pain associated with polyarthralgia. (Id. at 313), and on December 2, 2015, she saw Dr. Adam M. Buerk ("Dr. Buerk") for complaints of right knee pain. (Id. at 534.) At her appointment with Dr. Buerk, Dr. Buerk evaluated an MRI of Nieves-Rivas's right knee and x-rays of both Nieves-Rivas's knees. The MRI revealed that Nieves-Rivas had an ACL tear, and the x-rays revealed that she had "fairly significant primary osteoarthritis with bone-on-bone arthritis" in both knees. (Id.)

As treatment for her osteoarthritis, Nieves-Rivas received cortisone injections in both knees during her December 2015 appointment with Dr. Buerk, (tr. 534), and on February 3, 2016, Dr. Buerk administered a "Synvisc-one" injection to Nieves-Rivas for her right knee and a betamethasone injection in her left knee. (Id. at 539, 544.) Because of recurring pain in both knees, Dr. Buerk administered betamethasone injections in both of Ms. Nieves-Rivas's knees, and he ordered an MRI for her left knee. (Id. at 549.) Dr. Buerk evaluated the MRI of Nieves-Rivas's left knee on March 30, 2016, which revealed that there were

significant degenerative changes in that knee. (Id. 554.) Dr. Buerk also noted that Nieves-Rivas would probably need a knee replacement in the future. (Id.) After finding no relief from a Synvisc-one injection in her left knee on April 27, 2016, (id. at 559), Nieves-Rivas underwent several surgical procedures for her left knee on June 2, 2016. (id. at 490.) At her third post-surgery appointment with Dr. Buerk on August 17, 2016, Ms. Nieves-Rivas still reported having severe pain in her left knee but was unable to get another injection because her insurance would not cover it until October 2016. (Id. at 580.)

With regard to Ms. Nieves-Rivas's diabetes and peripheral neuropathy, her primary care physician, Dr. Clem Ciccarelli ("Dr. Ciccarelli"), diagnosed her with new-onset diabetes on August 5, 2015. (Tr. 413.) At this appointment, Nieves-Rivas denied any numbness/tingling and dropping of objects. (Id.) Ms. Nieves-Rivas was also diagnosed with hepatitis C at this appointment. (Id.) Dr. Ciccarelli reported on October 15, 2015, that Nieves-Rivas had peripheral neuropathy secondary to hepatitis C and type-two diabetes. (Id. at 505.) Dr. Ciccarelli also opined that during Nieves-Rivas's October 2015 appointment, that Nieves-Rivas was disabled due to her peripheral neuropathy, chronic fatigue, chronic neuropathic pain and arthritic knee pain as a result of her hepatitis C and diabetes. (Id. at 507.) On May 20, 2016, Dr. Ciccarelli completed a Medical Source Statement opining on the limitations caused by Nieves-Rivas's knee pain and

peripheral neuropathy of the hands and feet. (Id. at 456-457.) On July 25, 2016, Dr. Ciccarelli reported in his examination notes that Nieves-Rivas had stocking paresthesia of the hands and feet, and gross sensory paresthesia of the lower extremities. (Id. at 523.)

In addition, to these medical concerns, Nieves-Rivas faced a series of additional physical and emotional challenges and limitations. Ms. Nieves-Rivas has also been assessed as having major depressive disorder (tr. 420), systolic cardiovascular murmurs (id. at 433), asthma, essential hypertension, hyperlipidemia, dyspnea (id. at 509), lupus (id. at 323), history of tuberculosis (id. at 236), and morbid obesity. (Id. at 641.) Additionally, Nieves-Rivas has a prosthetic right eye. (Id. at 269.)

There were three medical opinions in the record to which the ALJ accorded weight when making his decision. The ALJ assigned limited weight to two of these opinions because he determined that their findings concerning Ms. Nieves-Rivas's ability to lift/carry weight were inconsistent with other doctors' findings and were not supported by the record as a whole. (Id. at 24.) The specific medical opinion that was rejected by the ALJ and is at issue in this appeal is that of Dr. Ciccarelli. Dr. Ciccarelli opined that Nieves-Rivas's neuropathy and osteoarthritis resulted in a cascading array of physical limitations for the plaintiff. According to the doctor, these limitations, considered in combination, were deemed disabling. However, the

6

ALJ only discussed one limitation found by Dr. Ciccarrelli, that Nieves-Rivas should not carry more than six to ten pounds, in rejecting the Medical Source Statement. The other limitations found by this treating source relating to her ability to sit, stand, and walk; her ability to use her hands and arms for manipulations; and her level of pain and how much it causes her to be off task were not addressed by the ALJ in this decision. (Id. at 456-457.)

In light of the medical evidence presented by Nieves-Rivas, the ALJ concluded that Nieves-Rivas was severely impaired by her diabetes, asthma, monocular vision, obesity, and osteoarthritis. (Tr. 19.) In consideration of the entire record, the ALJ found that Nieves-Rivas had the capacity to do sedentary work, however, she could only sit, stand, or walk for six of the eight hours in a workday; she was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; she should never climb ladders, ropes, or scaffolds; and she should have no exposure to dusts, gases, odors, fumes, or poor ventilation. (Id. at 22.) The ALJ also noted in the RFC that Nieves-Rivas has monocular vision. (Id.) Thus, even when the ALJ largely discounted Dr. Ciccarelli's treating source opinion, the resulting RFC fashioned by the ALJ permitted Nieves-Rivas to perform only a very narrow range of sedentary work.

On appeal, Nieves-Rivas asserts one objection to the ALJ's decision. She argues that Dr. Ciccarelli's opinion was entitled to either controlling or significant

weight in formulating the RFC, and that the ALJ provided an inadequate explanation for rejecting Dr. Ciccarelli's opinion. (Doc. 12 p. 12-15.) For the reasons set forth below, we find that the ALJ has not provided an adequate rationale for discounting this treating source opinion. Therefore we conclude that the ALJ's decision denying Ms. Nieves-Rivas benefits should be vacated and remanded.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of the Administrative Law Judge and the Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity

that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that he experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based upon a lay assessment of other evidence by the ALJ. In contrast, when an ALJ fashions an RFC determination on a sparse factual record or in the absence of any competent medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RF C is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the

claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he [or she] has rejected and which he [or she] is relying on as the basis for his [or her] finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999). In short, an ALJ's disability determination must also adequately explain the legal and factual basis for this disability determination. This burden of articulation applies with particular force to all aspects of an ALJ's assessment and evaluation of what is often conflicting evidence. Thus, "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong

reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v.

Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on

legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the court of appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004).

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B. Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence

At the time that Nieves-Rivas's case was considered by the ALJ, case law and the Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§404.1527(a)(2); 416.927(a)(2) (effective Aug. 24, 2012, through Mar. 26, 2017).[2] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §§404.1527(c); 416.927(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally are entitled to

---

[2] Some of the applicable regulations been revised since the ALJ issued her decision in this case. For instance, definition of "medical opinions," contained in 20 C.F.R. § 404.1527(a)(2) of the prior regulation is now designated as § (a)(1) in the revised regulation. Throughout this opinion, the court cites to the version of the regulations in effect at the time the ALJ rendered her decision. Although the revised regulations may be worded slightly differently, the changes have no effect on the outcome of this case.

more weight.  See 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (effective June 13, 2011, through Mar. 26, 2017) (defining "treating source"). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Given the emphasis that the Commissioner's regulations placed upon a treating source's relationship with the claimant, it has been held that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000).

While treating source opinions entitled to great weight, where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §§404.1527(c); 416.927(c).

Many of these factors also favor careful consideration a treating source's medical opinion, and have led courts to conclude that:

> In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000).

At the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact

that become part of the determination.  Id. At the ALJ and Appeals Council levels of the administrative review process, however, findings by nonexamining state agency medical and psychological consultants should be evaluated as medical opinion evidence. 20 C.F.R. §§404.1527(e); 416.927(e). (effective Aug. 24, 2012, through Mar. 26, 2017). As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6. Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinions and treating records of various medical sources.  Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources.  Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established

that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). However, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel,</u> 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Plummer</u>, 186 F.3d at 429)).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

### C.    <u>The ALJ's Assignment of Weight to Dr. Ciccarelli's Opinion Is Not Supported by Substantial Evidence.</u>

Nieves-Rivas asserts that the ALJ improperly rejected treating primary care physician, Dr. Ciccarelli's, Medical Source Statement, which opined on various physical capabilities affected by Nieves-Rivas's knee pain and peripheral neuropathy, because the ALJ failed to provide "good reasons" in rejecting the opinion. (Doc. 12 p. 12.)  Nieves-Rivas further asserts that Dr. Ciccarelli's opinion should have been assigned at a minimum significant weight, if not controlling weight, in the RFC assessment. (<u>Id</u>. at 15.) This assertion is based on 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), which state that generally, an ALJ will assign more weight to treating source opinions, and on the Third Circuit's consistent

recognition of the principle that treating physician's reports and opinions are to be accorded great weight. See Morales v. Apfel, 225 F.3d at 317.

In the ALJ's RFC assessment, the ALJ disposed of this treating source opinion in a single sentence, stating that he assigned limited weight to Dr. Ciccarelli's Medical Source Statement because "Dr. Ciccarelli's opinion that [Nieves-Rivas] should never lift/carry six to ten pounds is not supported by the record as a whole and is not consistent with Dr. Buerk's statements that [Nieves-Rivas] is doing well and that [she] has near full active range of motion." (Tr. 24.) In light of the legal tenets enumerated earlier, the Court agrees that this case should be remanded for further consideration of Dr. Ciccarelli's Medical Source Statement because we find that the ALJ's assessment of Dr. Ciccarelli's opinion is flawed for a number of reasons explained below.

Initially, we find that the ALJ's explanation for rejecting Dr. Ciccarelli's opinion is inadequate because it consists of a single sentence which does not provide a sufficient explanation concerning how the ALJ reached this decision. The regulations call for the ALJ to always provide "good" reasons and specific reasons for the weight assigned to a treating physician's opinions. SSR 96-2p, 1996 WL 374188 at *5. Such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." (Id.) Likewise, case law makes it

clear that: " Where, as here, the opinion of a treating physician conflicts with that of a non-treating [source]. . . , the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'   <u>Plummer</u>, 186 F.3d at 429 (citing <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993))." <u>Morales v. Apfel</u>, 225 F.3d 310,  317-18 (3d Cir. 2000).

As noted above, in this case the ALJ's first reason for rejecting Dr. Ciccarelli's Medical Source Statement was that the opinion that Nieves-Rivas should not lift more than six to ten pounds was not supported by the record as a whole. Though such an explanation could be considered "good reasoning" if it was supported by a discussion of that countervailing evidence, the ALJ does not provide us with that necessary explanation. Thus, in the absence of any fully articulated evidentiary analysis we are left to speculate whether this opinion was rejected for no reason or the wrong reason. In short, without any further explanation of how Dr. Ciccarelli's opinion was not supported by the record, we cannot judge whether the ALJ's rejection of that opinion as "not supported by the record as a whole" is sustained by substantial evidence.

In addition, we find that the ALJ's second reason for rejecting Dr. Ciccarelli's opinion, though it points to specific evidence, is troubling because we fail to see how it actually qualifies as a reason for rejecting this opinion. The statement made by Dr. Buerk, to which the ALJ refers as contradictory to Dr.

Ciccarelli's opinion, is a comment on Nieves-Rivas's recovery from surgery on her left knee. (Tr. 482.) We are unable to grasp how positive comments about the range of motion of Ms. Nieves-Rivas's left knee post-surgery contradicts Dr. Ciccarelli's opinion that Nieves-Rivas should not use her hands and arms to lift more than six to ten pounds, because such an observation does not directly speak to Ms. Nieves-Rivas's ability to lift and carry weight. Indeed, the ALJ's decision simply does not acknowledge that these two medical statements are discussing entirely different joint, and body functions. The ALJ's cursory explanation is especially unsatisfactory because it does not account for the fact that Dr. Ciccarelli's Medical Source Statement also concerns the effects that Ms. Nieves-Rivas's peripheral neuropathy has on her, which could play a role in her ability to lift various objects, and is unrelated to her range of motion.

In our view, the ALJ's decision also does not sufficiently address the effect that Nieves-Rivas's osteoarthritis has on her ability to lift/carry objects. Rather, the ALJ's analysis on this score seems to rest on speculative inferences. In particular, the Court is puzzled by the ALJ's reference at step four to treatment notes from Dr. Jajoria and Dr. Buerk concerning Ms. Nieves-Rivas's knees. The ALJ first referenced Dr. Jajoria in formulating the RFC when he gave little weight to non-examining state agency consultant Dr. Brown's opinion that Ms. Nieves-Rivas can lift/carry 20 pounds because the ALJ concluded that this finding was inconsistent

with Dr. Jajoria's statement that Nieves-Rivas has pain in her knees that is worse with activity. (Tr. 24.) Next, the ALJ found that Dr. Ciccarrelli's opinion that Nieves-Rivas should never lift/carry six to ten pounds was inconsistent with Dr. Buerk's statement that Nieves-Rivas is recovering well from her knee surgery and has a near full range of motion. (Id.) Yet, notably the findings of Drs. Jajoria and Buerk make no comment on how much weight Ms. Nieves-Rivas can lift/carry. Nonetheless, somehow the ALJ determined that these notes allowed him to reject two medical opinions and find that Nieves-Rivas's knee pain allows her to lift/carry six to ten pounds but not more than 20 pounds. Without some further discussion or analysis it is unclear what medical basis exists for this specific RFC finding. Because the ALJ's decision does not fully articulate what evidence he relied on when he assessed what Ms. Nieves-Rivas's weight carrying capabilities are, but instead merely describes what evidence was rejected, we cannot make an informed evaluation of the factual support for the ALJ's conclusion. See Schaudeck, 181 F.3d at 433 ("the ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding").

Finally, we note that the ALJ's explanation in rejecting Dr. Ciccarelli's opinion is inadequate because the ALJ fails to discuss any of the other limitations found by Dr. Ciccarelli and set out in his Medical Source Statement. For example, one limitation of significance that the ALJ failed to address is Dr. Ciccarelli's

opinion that Ms. Nieves-Rivas's pain would cause her to be off task 70 percent of the workday. (See tr. 457.) This would have been an important finding for the ALJ to specifically consider when formulating the RFC because the VE informed the ALJ at the hearing that if an employee was off task for more than 15 percent of the workday, there would be no jobs available to that employee. (See tr. 73.) Such a work-preclusive limitation found by a treating source certainly warrants analysis when considering the RFC, and the ALJ's failure to address this medical finding causes the Court to question whether the ALJ fully evaluated all aspects of Dr. Ciccarelli's opinions.

What further undermines our confidence in the ALJ's decision to reject this treating source opinion is that he also failed to acknowledge that about seven months prior to Dr. Ciccarelli's Medical Source Statement, Dr. Ciccarelli had found that Nieves-Rivas was disabled for the same reasons listed in the Medical Source Statement. (Tr. 507.) Thus, Dr. Ciccarelli's opinions reflected an informed medical judgment, gained over time and consistently expressed by a treating source. Because the ALJ's evaluation of Dr. Ciccarelli's Medical Source Statement is so limited, and because it does not address all material aspects of Dr. Ciccarelli's opinion that Ms. Nieves-Rivas is disabled, we find that we cannot conclude that the ALJ's decision is supported by substantial evidence.

In sum, we find that the ALJ failed to properly account for his reasoning in discounting Dr. Ciccarelli's Medical Source Statement. At the outset, the explanation provided by the ALJ is too cursory  to allow for informed judicial review concerning how he reached his conclusion about Dr. Ciccarelli's opinion. Moreover, when the ALJ cites in passing what is described as contradictory medical evidence to reject Dr. Ciccarelli's limitations on Nieves-Rivas's ability to lift and carry, that evidence pertains to an unrelated medical condition, the arthritis in her knees. Further the analytical gaps in this summary rejection of the treating source opinion, leaves us uncertain whether the ALJ has " 'reject[ed] [this] evidence for no reason or for the wrong reason.'   Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993))." Morales v. Apfel, 225 F.3d 310,  317-18 (3d Cir. 2000).  This concern is underscored by the fact that Dr. Ciccarelli is a physician who regularly treated Nieves-Rivas, and whose opinion was therefore entitled to great weight and careful consideration by the ALJ. Finally, we cannot consider this incomplete analysis of the treating source as a harmless error since even when the ALJ largely discounted Dr. Ciccarelli's treating source opinion, the resulting RFC fashioned by the ALJ permitted Nieves-Rivas to perform only a very narrow range of sedentary work.

Therefore, we will remand this decision and direct that judgment be entered in favor of Nieves-Rivas and against the Deputy Commissioner. Yet, while case

law calls for a remand and further proceedings by the ALJ in this case assessing this claim in light of the treating source opinion, nothing in our decision should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this opinion should be deemed as expressing an opinion on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

An appropriate order follows.

So ordered this 18th day of June, 2018.


<u> s/Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge